UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LABORERS' LOCAL UNION NO. 472 & 172, et al.**<br><br>      Petitioners,<br><br>v.<br><br>**DM FERNANDES CONTRACTS, LLC.,**<br><br>      Respondent. | Civ. No. 2:15-2009 (KM)(JBC)<br><br>OPINION |

    Before the Court is a motion to confirm an arbitration award. Although the relevant portions of the applicable collective bargaining agreement were not originally attached to the confirmation petition, they have now been supplied. I find a sufficient basis to confirm the arbitrator's decision.

**Background**

    Laborers' Local Union Nos. 172 and 472 are unions representing construction workers. According to the Petitioners, a construction company, Respondent DM Fernandes Contracts, LLC., agreed to be bound by the terms of a collective bargaining agreement with the Unions. (O'Hare Affidavit, ¶ 4) Under the terms of that agreement, DM Fernandes was required to make contributions to three funds that provide "fringe benefits" to union members: the Welfare Fund; the Pension Fund; and the Safety, Education, and Training Fund. The union alleges that DM Fernandes failed to make the required contributions during the period November 1, 2014 through November 30, 2014. (Award,[1] ¶ 1)

---

[1] Citations to the record will be abbreviated as follows:

"Award" – Arbitration Award and Order, Dkt. No. 1, Exh. B.
"CBA" – Effective March 1, 2012 to February 28, 2015, Agreement entered into
      between Utility...Locals 472 and 172, Dkt. No. 4-1.
"O'Hare Affidavit" – Affidavit of Edward H. O'Hare, Dkt. No 2-2.

1

The unions, along with the fringe benefit funds themselves and their law firm (which is one of the Petitioners) (collectively, the "Funds") brought suit against DM Fernandes in an arbitration proceeding. DM Fernandes did not appear or otherwise defend itself before the arbitrator. (*See* Award, 1) ("the Employer having failed to appear after due notice..."). DM Fernandes likewise has not appeared or otherwise defended the case before this Court.

The arbitrator, J.J. Pierson, issued an "Arbitration Award and Order." Pierson found that DM Fernandes was bound by the CBA and was delinquent in making some $19,883.33 in fringe benefit contributions for the period November 1, 2014 through November 30, 2014. (Award, ¶ 1) Pierson ordered several forms of relief:

> 1) That DM Fernandes pay to the Funds the $19,883.33 in delinquent contributions, plus interest at the rate of 8% per annum. (Award, ¶ 1)
>
> 2) That DM Fernandes pay attorneys' fees at the rate of 20% of the delinquent contributions, plus interest at the rate of 10% per annum. (Award, ¶ 2)
>
> 3) That in addition to those attorneys' fees, should the attorneys expend any effort to collect the funds after the entry of any court judgment, DM Fernandes should pay as attorneys' fees an additional 10% of the total amount due to the Funds. (Award, ¶ 9)
>
> 4) That DM Fernandes submit to an audit of its payroll records. (Award, ¶ 3)
>
> 5) That DM Fernandes pay the arbitrator's fee of $1,000.00. (Award, ¶ 4)

The Funds have petitioned this Court (Dkt. No. 2) to confirm the arbitrator's award.

## Discussion

### Legal standard

A district court's review of an arbitration award is highly deferential. Courts have described the review as "severely limited," *Mut. Fire, Marine &*

2

*Inland Ins. Co. v. Norad Reinsurance Co.*, 868 F.2d 52, 56 (3d Cir. 1989); *Swift Indus. V. Botany Indus.*, 466 F.2d 1125, 1130 (3d Cir. 1972). The Third Circuit has explained that "the terms of the arbitral award will not be subject to judicial revision unless they are completely irrational." *Mut. Fire*, 868 F.2d at 56. Accordingly, a court may vacate an arbitration award only in extreme circumstances. "Only when an arbitrator acted in manifest disregard of the law, or if the record before the arbitrator reveals no support whatsoever for the arbitrator's determination, may a district court invade the province of the arbitrator." *United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 380 (3d Cir. 1995) (internal quotation omitted). Indeed, so long as the arbitrator's award "draws its essence" from the Agreement in question, a Court should not vacate the award.

> A court may vacate an arbitrator's award if it does not draw its essence from the collective bargaining agreement, but instead represents the arbitrator's own brand of industrial justice. This exception is a narrow one. An arbitration award draws its essence from the bargaining agreement if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention.

*Tanoma Min. Co. v. Local Union No. 1269, United Mine Workers of Am.*, 896 F.2d 745, 747-48 (3d Cir. 1990) (internal quotations omitted).

**The arbitration award**

Although the facts of this case are relatively simple, the record is scattered among a few filings. I therefore briefly summarize where in the record I find support for the salient portions of the arbitrator's award.

The arbitrator concluded that DM Fernandes was bound to a collective bargaining agreement with the Union. It appears that the operative agreement is the CBA covering the period March 1, 2012 through February 28, 2015. A complete version of this CBA can be found at Dkt. No. 4-1 (excerpts from this version were separately provided at Dkt. No. 1, Exh. A). The Funds have

3

provided a signature page representing DM Fernandes' agreement to be bound by the CBA. (Dkt. No. 1, Exh. B) I defer to the award's recitation that sworn testimony established a delinquency in the amount of $19,883.33 for the period November 1, 2014, through November 30, 2014. (Award, ¶ 1)

The arbitrator ordered DM Fernandes to pay the delinquent contributions to the Fund. DM Fernandes' obligation to pay such funds is established by Articles 33, 34, and 35 of the CBA.

In addition to ordering that DM Fernandes pay the delinquent contributions, the arbitrator ordered DM Fernandes to pay attorneys' fees (plus interest) and the arbitrator's fee. Each award finds support in the CBA at Article 42.[2]

The Arbitrator likewise ordered DM Fernandes to undergo an audit of its financial records. (Award, ¶ 3) This, too, is provided for by the CBA. (*See* CBA, Arts. 33(f) and 34(d)) I note that the audit period ordered is lengthy, and begins prior to the beginning date of the operative contract. The contract was signed on March 1, 2013. (Dkt. No. 1, Exh. B) And the Arbitrator found a delinquency for the period November 1, 2014 through November 30, 2014. However, he ordered an audit of DM Fernandes's payroll records beginning on January 1, 2012, and proceeding through January 29, 2015. Although the audit period is lengthy, I see no basis to overturn the Arbitrator's selection of it.

---

[2] I note that the Arbitrator cited Article 38 of the CBA as justifying the award of these costs. This appears to be a clerical error. In a prior version of the CBA, the 2007-2012 version, Article 38 did indeed provide that in the event of a dispute over fringe benefit contributions, the losing party would pay the attorneys' fees and the arbitrator's fee to the victor (*See* Dkt. No. 4-2). The version of the CBA operative here, the 2012-2015 version, similarly provides, but does so in Article 42 (Dkt. No. 4-1). I note also that Article 42 serves as an exception to another provision of the CBA, Article 17, which provides that in all disputes arising under the CBA the parties shall bear their own costs. In short, this is an issue of numbering, not substance.

**Conclusion**

I will confirm the award of the arbitrator. A separate order will issue.

July 27, 2015
Newark, New Jersey

　　　　　　　　　　　　　　　　　　　　　　／s/ Kevin McNulty
　　　　　　　　　　　　　　　　　　　　　　Kevin McNulty
　　　　　　　　　　　　　　　　　　　　　　United States District Judge